UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Tampa)

James Smith, individually and on
behalf of others similarly situated,
and on behalf of the general public,

CASE NO.:  8:20-cv-00417-WFJ-AAS

     Plaintiff,

vs.

Oakley Transport Inc., Oakley
Transportation Group, Inc. (d/b/a
Oakley Transport),

     Defendants.

_____/

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ....................................................................................... 1

II.  SUMMARY OF DISCOVERY AND INVESTIGATION ....................... 3

III.  SUMMARY OF SETTLEMENT TERMS ............................................. 3

IV.  THE NOTICE PROCESS ....................................................................... 6

V.  APPLICABLE LEGAL STANDARDS ................................................... 7

VI.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL .......................................................... 10

   A.  Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an Exceptional Settlement to Which No Class Member or Governmental Entities Have Objected ...................................................... 10

   B.  The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties. ............................................................. 12

   C.  The Settlement Provides Exceptional Relief for the Class and Is Within the Range of Possible Recovery. ................................................... 14

     1.  Continued litigation would be risky, complex, lengthy, and expensive. ................................................................................................ 15

     2.  The Settlement is within the range of possible recovery.............. 17

   D.  The Settlement Treats All Class Members Equitably and Enjoys the Support of the Settlement Class. ............................................................... 23

   E.  The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable. ................................................. 24

VII.  CONCLUSION ..................................................................................... 25

Plaintiff James Smith, individually and on behalf of others similarly situated, by and through his undersigned counsel, and pursuant to the Settlement Agreement dated March 10, 2021 (ECF No. 84-2) and this Court's Preliminary Approval Order, dated March 17, 2021 (ECF No. 86), hereby requests that the Court grant final approval of the parties' class action settlement ("Settlement Agreement"). Specifically, Plaintiff requests this Court enter an order (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; (iii) finding that the notice program as set forth in Section VI of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and (e), as well as due process, and constitutes the best notice practicable under the circumstances; and (iv) granting leave pursuant to Local Rule 3.01(f), to submit the proposed order granting this motion, which is attached as Exhibit 1.[1]

## I.    INTRODUCTION

This $875,000 Settlement is in the best interest of the Settlement Class and satisfies the standard for approval as discussed herein. Plaintiff

---

[1] All capitalized terms used, but not defined herein, shall have the same meaning as in the Settlement Agreement. ECF No. 84-2.

and Class Counsel have adequately represented the Class, obtaining an exceptional Settlement to which no class member or governmental entities have objected. The Settlement is the product of arm's-length negotiations by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses, and it was reached only after intensive litigation, discovery, and arm's length negotiations, including a full-day mediation session.

Class Counsel believe that this is an excellent result for the Settlement Class, especially when weighed against the costs, risks, and delay of continued litigation, trial, and appeal. As a very present reminder of the risks of litigation, truck drivers represented by Class Counsel, asserting the same claims Plaintiff asserts here, recently suffered completed dismissal of their cliams in individual arbitration.[2] This settlement provides excellent relief for the class in light of that alternative outcome. Moreover, the Court-approved notice program has been fully implemented, with an estimated notice reach of 98%, which is well within the range endorsed by the Federal Judicial Center. *See* Declaration of Jeff

---

[2] *See Parr v. Stevens Transp., Inc.*, Case No. 3:19-CV-2378-S (N.D. Tex.), Dkt. Nos. 80, 84 (confirming arbitration awards that granted judgment based on conclusion that California law did not apply to work performed in California by interstate truck drivers).

Mitchell ("Mitchell Decl."), ¶ 10. No objections have been received and no valid requests for exclusion have been received. *See id*. at ¶¶ 11, 12. The Court should approve the Settlement.

## II.    SUMMARY OF DISCOVERY AND INVESTIGATION

Class Counsel's discovery and investigation has included, among other things: multiple telephone conferences with Plaintiff and a putative class member; review and analysis of over 15,000 lines of data reflecting loads hauled by Class Members to, from, and/or within California; preparation of a damage model to estimate class-wide damages for each of the claims asserted; and review and analysis of over 450 pages of documents reflecting Plaintiff's and other Class Members' job duties and compensation. *See* Declaration of Matthew Helland (ECF No. 84-1; "Helland Decl."), ¶ 3.

## III.    SUMMARY OF SETTLEMENT TERMS

Subject to the Court's approval and in exchange for the settlement of the Released Claims and other promises and covenants made in the Settlement Agreement, the Settlement Agreement provides that Defendants will pay a Gross Settlement Amount of $875,000.00, which does not include the Employer Share of Taxes. *See* Settlement Agreement, ¶ I.22. The Gross Settlement Amount includes (subject to Court approval):

- $6,562.50 to be paid to the California Labor and Workforce Development Agency pursuant to PAGA [*id.* ¶ I.27];

- $5,000.00 to Plaintiff as consideration for his execution of an individual general release [*id.* ¶ I.3];

- $262,500.00 in attorneys' fees (30% of the Gross Settlement Amount);

- $15,000.00 in Class Counsel's litigation costs and expenses [*id.* ¶ I.5]; and

- $20,000.00 for settlement administration [*id.* ¶ I.1].

The remainig Net Settlement Amount of $546,937.50 [*id.* ¶ 24] will be distributed among Settlement Cass and subclasses as follows:

- **Settlement Class:**[3] approximately $381,325.00 (70% of the Net Settlement Amount), to be prorated based on the number of loads hauled in and/or out of California to all Class Participants, with a factor applied for California residency;

- **PAGA Subclass:**[4] $2,187.50 (25% of the total $8,750.00 PAGA Allocation), to be prorated based on the number of loads hauled in

---

[3] The Settlement Class includes all current and former truck drivers employed by Defendants who drove within California for Defendants at any time from September 19, 2015 through December 31, 2020.

[4] Covering September 19, 2018 through December 31, 2020.

and/or out of California, with a factor applied for California
residency;

- **Paystub Subclass:**[5] approximately $54,475.00 (10% of the Net
  Settlement Amount), to be prorated based on the number of loads
  hauled in and/or out of California, with a factor applied for
  California residency; and

- **Waiting Time Subclass:**[6] approximately $108,950.00 (20% of the
  Net Settlement Amount), distributed per capita.

Settlement Agreement, ¶ VII.1.

Pursuant to the Settlement Agreement, checks will be mailed to
Class Members approximately 44 days after the date on which the Court's
final approval of the Settlement becomes a final non-appealable order. *Id.*
¶ VII.4. Within 220 days after checks are mailed, the Settlement
Administrator will issue a check with the Cy Pres Amount comprised of
the value of uncashed checks, if any, to the St. Christopher Truckers
Relief Fund, a nationwide nonprofit organization that helps truck drivers
and their families who are out of work due to illness or injury. *Id.* ¶ VII.5.
No settlement funds will revert to Defendants. *Id.* ¶ IV.1.

---

[5] Covering September 19, 2018 through December 31, 2020.
[6] Covering September 19, 2016 through December 31, 2020.

## IV.  THE NOTICE PROCESS

Pursuant to the Court's order granting preliminary approval (ECF No. 86), the Settlement Administrator sent the Court-approved Notice to the 691 Class Members on April 8, 2021, via first-class mail, in the form of Exhibit 1 to the Settlement Agreement. (*See* Mithcell Decl. at ¶ 8; ECF No. 84-2 ("April 8, 2021 Notice").)

On June 18, 2021, the parties filed a motion to continue the Final Approval Hearing, which was granted on June 21, 2021. (ECF Nos. 89, 90.)  In that motion, the parties informed the Court of a clerical error with the anonymized numbering system that was applied to Defendants' data, and that as a result, the figures representing each Class Member's California load counts and estimated Individual Settlement Amounts printed on the April 8, 2021 Notices were incorrect. (*Id.*)

On June 29, 2021, the Settlement Administrator mailed an additional notice to the Settlement Class Members ("June 29, 2021 Notice"), in the form reflected in Exhibit 1 to the parties' motion to continue the Final Approval Hearing. (Mitchell Decl. at ¶ 8; ECF No. 89-1.) The June 29, 2021 Notice informed Class Members of the clerical error, and provided corrected California load counts, estimated Individual Settlement Amounts, and updated dates for the Opt-Out Deadline and

Objection Deadline (September 27, 2021), and the Final Approval Hearing (October 14, 2021). (Mitchell Decl. ¶ 8, Ex. 2.)

During the notice period, Class Counsel's office responded to calls, received and recorded address updates from Settlement Class Members, and fielded basic question about the Settlement. (Declaration of Matthew C. Helland in Support of Attorneys' Fee Motion ("Helland Fee Decl."), ECF No. 95, ¶ 4.) The Settlement Administrator ensured that any returned notices were re-mailed as needed, and also was available to collect any objections and exclusions. (Mitchell Decl. at ¶¶ 10–12.) The Settlement Administrator has not received valid requests for exclusions or objections.[7] (*Id*.) The Settlement thus was well received by the Class Members.

## V.    APPLICABLE LEGAL STANDARDS

The approval process for a class action settlement takes place in three stages: preliminary approval, notice, and final approval. *See* Fed. R. Civ. P. 23(e). On this motion for Final Approval, the Court must determine whether the Settlement taken as a whole is "fair, reasonable, and

---

[7] Three Settlement Class Members submitted requests for exclusion in response to the April 8, 2021 Notice. However, the June 29, 2021 Notice informed Class Members that "any objections or requests to opt-out submitted in response to the initial notice are deemed invalid" and "if you previously responded to the notice – including submitting a dispute or a request to opt-out – you must submit a new response concerning this notice." (ECF No. 89-1.)

adequate," warranting final approval. *Kuss v. Am. HomePatient, Inc.*, No. 8:18-CV-2348-T-TGW, 2020 WL 7406744, at *5 (M.D. Fla. Jan. 23, 2020) (internal quotations omitted).

"Federal courts have long recognized a strong policy and presumption in favor of class action settlements. The Rule 23(e) analysis should be 'informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement.'" *Jairam v. Colourpop Cosms., LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Id.* (citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

In evaluating a proposed class action settlement, "the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.* "There exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being the most

complex.'" *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-00550-

CEH-CPT, 2020 WL 2517766, at *3 (M.D. Fla. Apr. 23, 2020) (citing

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)).

In determining whether a proposed settlement is fair, reasonable,

and adequate, courts are to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors are substantially similar to those previously adopted

by the Eleventh Circuit. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986

(11th Cir. 1984) (identifying the following factors for consideration: "(1)

the likelihood of success at trial; (2) the range of possible recovery; (3) the

point or below the range of possible recovery at which a settlement is fair,

adequate, and reasonable; (4) the complexity, expense, and duration of

litigation; (5) the substance and amount of opposition to the settlement;

and (6) the stage of proceedings at which the settlement was achieved."); *Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1240 (11th Cir. 2011) (same); *In re Equifax Inc. Customer Data Sec. Breach Litig*., No. 1:17-MD-2800-TWT, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020) (finding that the *Bennett* factors "overlap" with the factors found in Rule 23(e)(2)); *Kuss v. Am. HomePatient, Inc.*, No. 8:18-CV-2348-T-TGW, 2020 WL 7406744, at *6 (M.D. Fla. Jan. 23, 2020) (stating Rule 23(e)(2) factors provide a "complementary approach" to that approved in the Eleventh Circuit.). Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig*., 830 F. Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Applying the venerable standards above, final approval should be granted because the Settlement and the notice program satisfy the requirements for final approval in all respects.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL.

### A.    Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an Exceptional Settlement to Which No Class Member or Governmental Entities Have Objected.

10

Both Plaintiff and Class Counsel have adequately represented the Class by achieving a Settlement that provides for of $875,000.00, exclusive of the Employer Share of Taxes. *See* Settlement Agreement, ¶ I.22. Plaintiff has been actively involved throughout the course of the litigation and settlement, and has had multiple telephone conferences with Class Counsel. (Helland Decl. ¶ 3.) Plaintiff's assistance was vital to Class Counsel's investigation of the class claims and their understanding of the relevant documents and potential damages.

Class Counsel have also fully and adequately represented all Settlement Class Members. Class Counsel vigorously litigated this case including pre-litigation investigations, drafting pleadings, opposing Defendants' Motion to Dismiss and Motion to Transfer (ECF Nos. 27-28), scheduling mediation, communication with defense counsel, interviewing Plaintiff and a class member, reviewing and analyzing Defendants' document production, drafting the mediation statement, arms' length negotiations between the parties, attending the full-day mediation, post-mediation issues including finalizing the Settlement, drafting and filing the Motion for Preliminary Approval, and overseeing the notice process including issuing corrected notices. (Helland Decl. ¶¶ 3, 4.)

It is Class Counsel's informed opinion that this Settlement represents an exceptional result and is in the best interest of the Class. (*See* Helland Decl., ¶ 9; *see also Warren v. City of Tampa,* 693 F. Supp. 1051, 1054 (M.D. Fla. 1988) ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation.")).

Lastly, to date, no Settlement Class Member has objected to the Settlement. *See* Mitchell Decl. at ¶ 12. And, while no governmental entity is a party to this litigation, notice was issued to the appropriate federal and state officials in accordance with 28 U.S.C. § 1715, and to date, no governmental entity has raised an objection or concern about the Settlement. Accordingly, these factors weigh in favor of final approval.

## B. The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties.

Courts recognize that arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements. *See Hanley v. Tampa Bay Sports & Ent. LLC*, No. 819CV00550CEHCPT, 2020 WL 357002, at *3 (M.D. Fla. Jan. 7, 2020) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery."

The Court's role is to ensure the agreement "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal quotations omitted). "In doing so, the Court examines "whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *M.D. v. Centene Corp., Inc.*, No. 1:18-CV-22372-JB, 2020 WL 7585033, at *5 (S.D. Fla. Oct. 7, 2020). The use of a mediator "lends further support to the absence of collusion." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001); *see also Checking Account Overdraft Litig.*, 275 F.R.D. at 662 (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

Here, the Settlement Agreement was reached through arms-length settlement negotiations against the backdrop of extensive investigation and review of class data and policies exchanged for mediation. (Helland Decl. ¶ 3.) These negotiations were faciliated by an experienced wage-and-hour mediator, Steve Pearl, during a full-day mediation session on October

13

28, 2020. *Id.* ¶ 4; *see also Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (quoting *Adams v. Inter-Con Sec. Sys., Inc.*, 2007 U.S. Dist. LEXIS 83147, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007)).

In sum, the Settlement was achieved through arm's-length negotiations conducted by competent counsel, and there are no grounds to doubt the Settlement's fairness.

### C.    The Settlement Provides Exceptional Relief for the Class and Is Within the Range of Possible Recovery.

When determining if the relief provided for the class is adequate, Rule 23 instructs this Court to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). The correlating *Bennett* factors provides that a court should consider the range of possible recovery and the point at which the agreement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986. Each of these factors weighs in favor

14

of final approval.

### 1. Continued litigation would be risky, complex, lengthy, and expensive.

Plaintiff achieved an excellent result in this settlemnt, given the amount obtained and the risks of this particular case. The interests of the class are therefore well-served by the Settlement. *See Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1381 (S.D. Fla. 2007) ("The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation.") (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988)); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and

not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation.'"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is not a guarantee of ultimate success").

The risks of continued litigation are significant. Defendants have vigorously denied Plaintiff's allegations of wrongdoing. *See Paugh v. Walgreen Co.*, No. 12-21229-CIV, 2014 WL 12536975, at *3 (S.D. Fla. Jan. 22, 2014); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985)), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). Defendants filed a Motion to Dismiss and Motion to Transfer early in this case. (ECF Nos. 27-28.) Plaintiff anticipates that Defendants would likely have vigorously opposed class certification and moved for summary judgment if this case were to continue. In a very similar case where Class Counsel represents truck drivers, the respondent employer successfully defeated the drivers' claims on the pleadings. *See Parr*, Case No. 3:19-CV-2378-S (N.D. Tex.), Dkt. Nos. 80, 84 (confirming arbitration awards that granted judgment based on conclusion that California law did not apply to work performed in California by interstate truck drivers). Although Class Counsel believe the

*Parr* case was wrongly decided, it nevertheless highlights the risk in any litigation, and in the risks in this case in particular. Thus, continued litigation of the action would have been—at best—lengthy and expensive, requiring substantial briefing on substantive issues, with the possibility of Plaintiff litigating this case on a class basis through judgment uncertain. Moreover, even if Plaintiff were to prevail through continued litigation and trial, he still faces significant risks as an appeal by Defendants would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia*, 314 F. Supp. at 743-44.

### 2. The Settlement is within the range of possible recovery.

The Net Settlement Amount is approximately $546,937.50, allocated as follows:

### (a)    $381,325.00 for Minimum Wage Claims (First Cause of Action).

The $381,325.00 allocated to the minimum wage claim is approximately 25% of the $1,537,949.00 of the alleged classwide unpaid minimum wage loss, which Plaintiff calculated based on each class member's load data.  Helland Decl., ¶ 6. "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not

mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Here, the 25% recovery rate for the minimum wage claim is fair given the numerous arguments raised by Defendants that Plaintiff and the class would need to overcome to prevail on this claim:

- Defendants maintain that the time drivers spent on meal breaks, rest breaks, and in the sleeper berth was not compensable because Defendants did not control their activities during this time. Given that time spent in the sleeper berth accounted for approximately $1,042,580.00 of Plaintiff's alleged classwide unpaid minimum wages, Plaintiff estimates that a ruling in Defendants' favor on this point would reduce the class' total potential minimum wage recovery to at least $495,369.00 for non-driving activities other than sleep breaks (i.e. fueling the truck, performing required inspections on the truck, having the truck cleaned between deliveries, rest breaks, and staying with the truck while it was being loaded and unloaded), of which the $381,325.00 in settlement funds is 77%.

- Defendants maintain that California's minimum wage requirements

do not apply to interstate truck drivers. *See Parr*, Case No. 3:19-CV-2378-S (N.D. Tex.), Dkt. Nos. 80, 84; *Huddleston v. John Christner Trucking, LLC*, 2020 U.S. Dist. LEXIS 204453, at *14-19 (N.D. Okla. Oct. 26, 2020) (holding that California law did not apply to work performed in California by interstate truck drivers); *Perez v. CRST Int'l, Inc.*, 355 F. Supp. 3d 765 (N.D. Iowa 2018) (same).

- Defendants maintain that even if California's minimum wage requirements do apply to the drivers' work in California, it paid additional compensation for certain tasks and its mileage-based pay program complied with state law. *See Ayala v. U.S. Xpress Enters.*, 851 F. App'x 53 (9th Cir. 2021) (addressing the issue, certified for interlocutory review, of whether Cal. Lab. Code § 226.2 permits a trucking company to define the scope of its piece-rate compensation system as the delivery of a cargo, even though it is calculated using a pre-determined mileage, and finding in the affirmative).

- Although Plaintiff sought an award of liquidated damages to the class equal to the amount of unpaid minimum wages, *see* Cal. Lab. Code § 1194.2, an employer is not liable for liquidated damages if it shows that acted in good faith and with a reasonable belief in the legality of its conduct. Here, Defendants maintain that they had a reasonable belief that

California's minimum wage requirements do not apply to the work Class Members performed in that state, and/or that their mileage-based pay was compliant with those requirements. *See Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1089-1090 (9th Cir. 2020) (affirming district court's ruling that truck drivers were not owed liquidated damages based on minimum wages accruing from mileage-based compensation system).

> **(b)** **$54,475.00 allocated to the Paystub Subclass for the claim for Failure to Provide Code-Compliant Wage Statements (Fourth Cause of Action).**

The $54,475.00 allocated to the wage statement claim is approximately 15% of the total wage statement penalties available if the entire class prevailed on this claim. (Helland Decl., ¶ 7.) Given the significant risk that Cal. Labor Code § 226's wage statement requirements would be found inapplicable to most or all Class Members, given that they worked throughout the United States and not primarily in California, this is a very fair result. *See Ward v. United Airlines, Inc.*, 9 Cal. 5th 732 (2020) (holding that Section 226 did not apply to flight attendants who neither performed their work predominantly in California nor were based for work purposes in California). If Plaintiff prevailed only as to those drivers who were based in California, the wage statement recovery would be only $22,450.00. (Helland Decl., ¶ 7.) Moreover, even if the Court found

20

that Labor Code § 226 applied to the drivers here, recovery is still not
certain because Defendants argue that any alleged violation was not
knowing and intentional.

### (c) $108,950.00 allocated to the Waiting Time Subclass for the claim for Waiting Time Penalties (Fifth Cause of Action).

The $108,950.00 allocated to the claim for waiting time penalties is
approximately 7% of the penalties the class stood to recover. (Helland
Decl., ¶ 8.) Since this is derivative of the minimum wage claims, it is
subject to the same risk and discount factors discussed above with respect
to those claims. Further, Cal. Labor Code §§ 201-203 require a plaintiff to
prove that the employer's withholding of owed wages was "willful," which
Defendants would dispute, arguing they had a good faith belief that no
minimum wages were owed to the drivers. Additionally, while the
California Supreme Court did not address whether waiting time penalty
claims are available to non-resident workers, there is a risk that a court
could find that the *Oman* holding regarding Labor Code §§ 204 and 226
also applies to §§201-203, severely limiting the possible recovery here. *See
Oman*, 9 Cal. 5th at 778 (describing sections 204 and 226 as "payment
timing requirements"). In that case, total classwide recovery would be
limited to $45,479. Helland Decl., ¶ 8.

> ### (d)    $8,750.00 allocated to the PAGA Subclass for the PAGA Claim (Seventh Cause of Action).

The $8,750.00 allocated to the PAGA claims (representing one percent of the Gross Settlement Amount) is fair because the amount of PAGA penalties to award is well within the Court's discretion. *See* Cal. Lab. Code § 2699(e)(1) (court exercises discretion in awarding civil penalties under PAGA); *Nordstrom Commission Cases*, 186 Cal.App.4th 576, 589 (Cal. Ct. App. 2010) (settlement approved despite no allocation for PAGA civil penalties). Courts routinely approve PAGA allocations representing similar portions of wage settlements. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (approving PAGA penalties worth 0.32% of gross settlement); *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at **1, 3 (N.D. Cal. Feb. 17, 2017) (approving PAGA penalties worth 0.33% of gross settlement); *Alexander v. FedEx Ground*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (0.67%); *Cruz v. Sky Chefs*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%).

While the Settlement does not include a specific allocation for Failure to Provide Off-Duty Meal and Rest Periods (Second and Third

Causes of Action), this does not undermine the fairness of the Settlement
because such claims were recently held to be preempted by federal law.
*See Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety
Admin.*, 986 F.3d 841 (9th Cir. 2021).

### D. The Settlement Treats All Class Members Equitably and Enjoys the Support of the Settlement Class.

Under the Settlement Agreement, there is no unfair or preferential
treatment of any Settlement Class Member. *See M.D. v. Centene Corp.,
Inc.*, 2020 WL 7585033, at *7; *see also Hendricks v. Starkist Co.*, No. 13-
CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). The
Net Settlement Amount will be allocated amongst each Settlement Class
Member based on the number of loads hauled in and/or out of California,
with California-resident drivers' loads given double value, based on Class
Counsel's understanding that a person who resided in California while
working as a driver would have a stronger claim to coverage under the
various California provisions at issue than a non-California resident.
Helland Decl., ¶ 5. The funds in the Waiting Time Subclass will be
distributed per capita, given that §§ 201-203 entitle an employee to a
maximum penalty of thirty days of wages, regardless of the amount of
time worked. In addition to his share of the Net Settlement Amount,

23

Plaintiff will receive a payment of $5,000.00 to Plaintiff as consideration for his execution of an individual general release, subject to Court approval, *see* Settlement Agreement, ¶ I.3, which is fair for the reasons set forth in Plaintiff's Unopposed Motion for Award of Attorneys' Fees, Costs, and Expenses, Approval of Payment of General Release Consideration, and Approval of Payment for Settlement Administrator. (ECF No. 94, PageID 755-756)

Further, no objections have been received and no valid requests for exclusion have been received. Mitchell Decl. at ¶¶ 11, 12. Thus, the Settlement enjoys the overwhelming support of the Settlement Class. *M.D. v. Centene Corp., Inc.*, 2020 WL 7585033, at *7 (finding the "low percentage of objections demonstrates the reasonableness of [the] settlement, and supports its approval as fair and reasonable." (internal quotation omitted)).

### E. The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable.

The Court has already determined that the notice program in this case satisfies Rule 23 and due process. Preliminary Approval Order (ECF No. 86) at ¶ 2. The Settlement Administrator has now fully implemented the notice program, providing an estimated 98% of Settlement Class

24

Members with notice. *See* Mitchell Decl. at ¶ 10. Accordingly, the Notice provided to Settlement Class Members fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## VII. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court enter an order (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; (iii) finding that the notice program as set forth in Section VI of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and (e), as well as due process, and constitutes the best notice practicable under the circumstances; and (iv) granting leave pursuant to Local Rule 3.01(f), to submit the proposed order granting this motion, which is attached as Exhibit 1.

### **LOCAL RULE 3.01(g) CERTIFICATION:**

Counsel for the Plaintiff certifies that counsel for Defendants have been consulted and have represented that Defendants do not oppose this Motion.

RESPECTFULLY SUBMITTED,

25

September 30, 2021

/s/ *Matthew C. Helland*
Matthew C. Helland, Admitted *Pro Hac Vice*
Daniel S. Brome, Admitted *Pro Hac Vice*
dbrome@nka.com
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Ste. 810
San Francisco, CA  94104
Tel: (415) 277-7235
Fax: (415) 277-7238

Jason T. Brown, Admitted *Pro Hac Vice*
Nicholas R. Conlon, Admitted *Pro Hac Vice*
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
BROWN, LLC
111 Townsquare Pl., Ste. 400
Jersey City, NJ 07310
Tel: (877) 561-0000
Fax: (855) 582-5297

Gregg I. Shavitz, FL Bar No. 11398
gshavitz@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Tel: (800) 616-4000
Fax: (561) 447-8831

Attorneys for the Plaintiff and the
Putative Class

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2021, a true and correct copy of the foregoing Unopposed Motion and Memorandum of Law in Support of Final Approval of Class Action Settlement was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent to counsel for Defendants via the Court's CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

/s/ *Matthew C. Helland*
Matthew C. Helland